Cockcroft *v.* Metropolitan Life Insurance
Company, Appellant.

294

Argued October 15, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Owen B. Rhoads,* with him *Dechert, Smith & Clark* and *Harry Cole Bates,* for appellant.

*Albert L. Moise,* for appellee.

Opinion by Rhodes, J., January 29, 1937:

Plaintiff is the beneficiary named in four policies of insurance issued by the defendant company on the life of her husband. Upon the death of the insured, on

February 16, 1935, the defendant paid the plaintiff the face amount of the policies. Plaintiff brought this suit to recover under a rider attached or applicable to each of the policies allowing double indemnity if the insured died under the conditions therein set forth. The case was tried in the Municipal Court of Philadelphia County before a judge without a jury. The trial court made a finding in plaintiff's favor, and judgment was entered on the finding. Defendant's motions for judgment n.o.v. and a new trial were dismissed. Defendant appealed.

The accidental death benefit rider, attached to two of the policies upon which suit was brought, and admitted by defendant to be applicable to the other two policies to which they were not attached and upon which suit was likewise brought, provided: "Industrial Policy Accidental Death Benefit. Upon receipt of due proof that the Insured......has sustained...... bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the Insured......the Company will pay in addition to any other sums due under this Policy and subject to the provisions of this Policy an Accidental Death Benefit equal to the face amount of insurance then payable at death......

"No Accidental Death Benefit will be paid if the death of the Insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity."

Defendant defended the action on the grounds that the death of the insured was the result of his self-destruction; that, while temporarily deranged, he took his own life by gas; that plaintiff never furnished defendant any information or proofs of accidental death in accordance with the terms and conditions of the policy; and that plaintiff accepted the face amount of

the policies in full settlement of all liability of defendant under said policies.

We are of the opinion that judgment must be reversed and a new trial granted, because the court below failed to fully recognize that the burden of proof to show that the death of the insured came within the provisions and conditions of the accidental death benefit rider was on the plaintiff. In its opinion the court below stated: "Defendant avers that the death of said insured was the result of self-destruction and that said insured, while temporarily deranged, took his own life by gas. Under such an averment, the burden of proof is placed upon the defendant, who, in the instant case, offered no evidence except the certificate of death attached to the proofs of death......[The record before us shows that this certificate was offered by plaintiff and not by defendant.] The party alleging suicide must prove it, because the mere fact of death in an unknown manner creates no legal presumption of suicide. Preponderating evidence is necessary to establish the latter......The Court having found as a fact that insured's death was not the result of suicide and there being no credible evidence presented to prove contributory disease, plaintiff's claim against defendant became liquidated in the sum of $3613.44." Although this case was tried before a judge without a jury, nevertheless that fact-finding body is governed by the same legal principles as are applicable when the case is tried by the court with a jury. Had the trial judge charged a jury that they should proceed in the same manner to determine the issues as he sets forth in his opinion as the method by which he sustained plaintiff's claim, it would have constituted reversible error.

The defense of death by suicide is an affirmative defense, and in this case the burden of such proof would be upon defendant. *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 508, 173 A. 664, 650; *Ligouri v.*

*Supreme Forest Woodmen Circle,* 318 Pa. 424, 426, 178 A. 398.

Plaintiff nevertheless had the burden to make out a prima facie case notwithstanding the nature of the defense. To do this plaintiff had to do more than merely produce the policy and prove the death of the insured. She had the burden of proving by competent evidence that the insured's death was caused by external, violent, and accidental means, and that it resulted solely from such means, i.e., was not "caused, or contributed to, directly or indirectly or wholly or partially, by disease, or by bodily or mental infirmity": *Lubowicki v. Metropolitan Life Ins. Co.,* 114 Pa. Superior Ct. 596, at page 599, 174 A. 649, at page 650.

The trial judge should have based his finding for plaintiff on the proofs produced by plaintiff, and not on the failure of defendant to sustain its affirmative defense of suicide.

Where, as here, plaintiff alleges that the insured came to his death solely through external, violent, and accidental means, and the defense is suicide, "the burden to prove all the operative facts by a fair preponderance of the evidence rests upon the plaintiff," and "the necessary proof-element of accidental death is not supplied, prima facie, by the so-called 'presumption against suicide' ": *Marlowe v. Travelers Ins. Co. of Hartford, Conn.,* 320 Pa. 385, at page 388, 181 A. 592, at page 593.

Defendant contends that it was a condition precedent to plaintiff's right to recover for double indemnity that she first comply with the provisions of the policies requiring her to furnish to defendant due proofs that death of the insured resulted from external, violent, and accidental means.

Defendant cannot take advantage of the plaintiff's failure to file what it may call "due proof," if such failure was caused by, or was the result of, the action of defendant. Upon plaintiff's demand for double in-

demnity, after having filed proofs of death, a waiver of additional proofs may be inferred if defendant denied liability on other grounds than failure to file such proofs. In this case the proofs of death which were filed provided that plaintiff "will furnish any further proof the Company may demand." If it appears that defendant did not request additional proofs, or "due proof that the insured......has......sustained...... bodily injuries, solely through external, violent, and accidental means, resulting, directly and independently of all other causes, in the death of the Insured," after demand by plaintiff for the payment of double indemnity, but denied liability and refused to pay the double indemnity, what would be the use of filing such proofs? Such an act upon the part of plaintiff would have been a vain thing, the performance of which would have been useless. After such a refusal, formal additional proofs would not be necessary. *Fedas v. Insurance Co. of the State of Pennsylvania,* 300 Pa. 555, 151 A. 285; *Amrovcik v. Metropolitan Life Ins. Co.,* 119 Pa. Superior Ct. 176, 180 A. 727.

Defendant also contends that plaintiff, having accepted defendant's check on March 12, 1935, in payment of the face amount of the policies, which stated that it was in full payment of all claims, and having executed under seal a release in favor of defendant from all claims and demands under the policies, is estopped from recovering in this suit for further benefits under the same policies.

There were two causes of action under the policies in question; one for natural death, and the other for accidental death. Whether the release given upon settlement of the death claim relinquishes any rights to recover for accidental death, carrying with it double indemnity, depends upon the facts and circumstances existing at the time of the execution of the release. "The law is, that the words used in a release ought never to

be extended beyond the consideration; otherwise it would make a release to the parties, what they never intended or contemplated": *Rapp v. Rapp*, 6 Pa. 45, at page 51. See *Flaccus v. Wood, Ex'x*, 260 Pa. 161, 165, 103 A. 549, 551.

It does not appear from the evidence that there was any demand for double indemnity made by plaintiff prior to the execution of the release which is on check dated March 11, 1935. On the contrary, it may be reasonably inferred from the testimony that she had no knowledge of such a possible claim under the policies. She did not have the policies after February 18, 1935, when she delivered them to an agent of defendant. Two of the policies did not even have attached the riders, although subject to their provisions, when proofs of death were executed on February 21, 1935, and settlement made on March 12, 1935. The release had no application to a claim for double indemnity if she had no knowledge of its existence or of her rights to make such a claim under the policies at the time she executed the release upon receipt of the face amount of such policies. "It is a settled rule of construction that an agreement comprehends only those things in respect to which it appears the contracting parties proposed to contract, and not others they never thought of......the release cannot be allowed to embrace anything beyond it": *Crum v. Pennsylvania Railroad Co.*, 226 Pa. 151, at page 156, 75 A. 183, at page 185. A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties when it was given. See 53 Corpus Juris § 85, p. 1268; *Miskel v. Lehigh Valley Coal Co.*, 85 Pa. Superior Ct. 357, 361.

Plaintiff was not bound by the proofs of death which she filed, and which had attached thereto copy of the death certificate on file in the Bureau of Vital Statistics, and which sets forth: "The Cause of Death was as follows: Carbon Monoxide Poisoning. Found in Kitchen

of his home with gas oven burner turned on. Temp. Deranged (suicide)." The death certificate attached to the proofs of death was signed by C. H. Hersch, Coroner, and was dated March 4, 1935. The proofs of death were executed by plaintiff on February 21, 1935. "As to proofs of death, it has been held in this State, time and again, that while they are admissible in evidence against the plaintiff the latter is not estopped at the trial by anything stated therein by physicians or others. Such statements are open to explanation or even to contradiction by the plaintiff [cases cited]...... The copy of the death certificate on file in the Bureau of Vital Statistics is at best no more conclusive on the plaintiff than the proofs of death": *Borgon v. John Hancock M. Life Ins. Co.,* 99 Pa. Superior Ct. 377, at pages 381, 382.

At the trial plaintiff herself offered in evidence the proofs of death, together with the death certificate attached thereto, for the purpose of establishing the date of insured's death, and to prove that his death, or the cause of his death, as asserted therein, was from monoxide poisoning. Defendant objected to the offer of the certificate and the proof of death unless offered in its entirety (8th assignment of error). The court below accepted plaintiff's offer, and stated that it would ignore that part referring to suicide. We think the defendant's objection should have been sustained. See *Rush et al. v. Good,* 14 Serg. & R. 226; *Shaller et al. v. Brand,* 6 Binney 435; *Branford Trust Co. v. Prudential Ins. Co. of America* (Conn.), 129 A. 379; *Mutual Benefit Life Ins. Co. v. Newton,* 22 Wall. 32, 89 U. S. 793; 22 Corpus Juris § 1217, p. 972; 10 R. C. L. § 288, p. 1088. The whole statement must be taken together, although, "if evidence at all, it is evidence only for what it is worth......and concludes nobody": *Borgon v. John Hancock M. Life Ins. Co.,* supra, 99 Pa. Superior Ct. 377, at page 384. Plaintiff will have an opportunity, on the retrial of this

case, to establish her claim by such proof and in such manner as our decisions require; and the sufficiency of her evidence will then be determined.

Judgment is reversed, with a venire.