Zurich General Accident and Liability Insurance Company, Ltd. *v.* Klein et ux., Appellants.

Argued March 6, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Irving L. Epstein,* for appellants.

*William J. Garvey,* with him *James W. Scanlon,* for appellee.

OPINION BY ERVIN, J., April 11, 1956:

This action in equity involves the application of the doctrines of "unjust enrichment" and "restitution."

The lower court found, upon ample evidence, that the defendants, appellants, sold certain real estate to a purchaser under general warranty deed, warranting that the property was free and clear of any incumbrances. The attorney who searched the title for the purchaser failed to discover the liens of certain unpaid taxes against the property for years prior to the date of purchase. Subsequently the purchaser, who was threatened with a tax sale, paid the delinquent taxes and claimed reimbursement from the attorney. Plaintiff, appellee, the insurer on the attorney's liability policy covering the title search, upon being notified of the claim by the attorney, paid the purchaser the amount of the delinquent taxes. Appellee, after demand for reimbursement, filed a complaint in equity

claiming this amount from appellants, the original vendors, on the theory that appellants improperly retained money from the purchase price which should have been used to pay the delinquent taxes and so were unjustly enriched at the expense of appellee. In new matter the appellants pleaded a release from the purchaser. This release was excluded from evidence by the lower court for reasons hereinafter considered.

Appellants have appealed from the lower court's final decree entering a money judgment for appellee to reimburse it for the money paid to reimburse the purchaser.

The principal argument of appellants is that this is not a suitable case for the application of the above mentioned doctrines. With this contention we do not agree.

Section 1 of Restatement, Restitution, provides: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Comment a under this section provides: "A person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust. A person obtains restitution when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received, but as stated in Comment e, if the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment." Comment b under the same section provides: "A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels or choses in action, performs services beneficial to or at the request of the other, satisfies a debt

or a duty of the other, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage. The advantage for which a person ordinarily must pay is pecuniary advantage; it is not, however, necessarily so limited, as where a physician attends an insensible person who is saved subsequent pain or who receives thereby a greater chance of living."

Section 3 of Restatement, Restitution, provides: "A person is not permitted to profit by his own wrong at the expense of another." Section 2 of Restatement, Restitution, provides: "A person who officiously confers a benefit upon another is not entitled to restitution therefor."

Appellee paid a debt which was rightfully owed by appellants. This payment by appellee was not officious since appellee was under a contractual duty to the attorney who searched the title. If his clients, the purchasers, had instituted an action against their title searcher and had recovered a judgment against him, the claim against the appellee could have been enforced by attachment execution and the appellee would have been obligated to pay the same to the purchasers. *Moses v. Ferrel and Indemnity Company of America,* 97 Pa. Superior Ct. 13. Appellants have been unjustly enriched because appellee has discharged an obligation owed by appellants under such circumstances that appellants would be unjustly enriched by the retention of the benefits thus conferred. Appellants had, by general warranty deed, conveyed the premises to the purchasers. A vendor by general warranty is obliged to deliver a deed that is free of liens for taxes and he covenants to defend the grantee's title against all mankind, the whole world. *Memmert v. McKeen,* 112 Pa. 315, 4 A.

542; *Taylor v. Allen,* 60 Pa. Superior Ct. 503; Ladner, Real Estate Conveyancing, 2d Ed., p. 148. Appellants failed to deliver a deed free and clear of taxes and failed to pay the obligation rightfully owed by them. When appellants purchased the property from their predecessor in title, Gerald McDermott, appellants were given credit for the taxes later paid by the purchasers. This amount was subtracted from the amount which was due and owing to the said McDermott and credit for the same was given to the appellants. It is our opinion that these facts require the application of the equitable doctrines of unjust enrichment and restitution in order to prevent a miscarriage of justice.

Appellants argue that appellee did not prove that appellants authorized appellee to pay the money; that appellee did not prove that it was acting in behalf of appellants or that it had any authority from appellants to so act; and that there was no promise, either express or implied, that appellants would reimburse appellee. None of these proofs were necessary when it was proved that appellants were unjustly enriched at the expense of appellee.

Appellants also argue that appellee was a mere volunteer and present some cases which are not applicable to the facts of this case and which therefore need not be discussed. This argument is completely nullified by proof that appellee was under contract to make good to the purchaser for the attorney title searcher's mistake. Appellants argue that there was no privity of contract. Under the doctrines here considered there need be no privity of contract. If there had been privity of contract appellee could have sued appellants in an assumpsit action at law. Equity for a long period of time has entertained jurisdiction of restitution actions for, inter alia, the reason that there was no privity of contract.

Section 162 of Restatement, Restitution, provides: "Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder." Comment a of this section provides: *"The right to subrogation.* A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant, where the plaintiff's property has been used in discharging an obligation owed by the defendant or a lien upon the property of the defendant, by creating in the plaintiff rights similar to those which the obligee or lien-holder had before the obligation or lien was discharged. In such a case the procedure is called subrogation, and the plaintiff is said to be subrogated to the position of the obligee or lien-holder. Although the obligation or lien has been discharged, the plaintiff can maintain a proceeding in equity to revive it for his benefit; in such a proceeding the court will create for the benefit of the plaintiff an equitable obligation or lien similar to that which was discharged. Just as the establishment and enforcement of a constructive trust is a method of giving the plaintiff restitution where the defendant has acquired property from the plaintiff or through the disposition of the plaintiff's property, so where property of the plaintiff is used in discharging an obligation or lien he obtains restitution through subrogation. Where the plaintiff's property is used in purchasing a claim against a third person or a lien held by a third person, the person purchasing such a claim or lien holds it upon a constructive trust for the plaintiff; but where the plaintiff's property is used in discharging such a claim or lien, a court of equity gives analogous relief by allowing the plaintiff to be sub-

rogated to the position which the obligee or lien-holder occupied prior to the discharge." Comment b of this section provides, inter alia, that a plaintiff is not officious "where he was under a duty to make the payment, as for example where he was a surety." When the purchasers paid the municipalities' past due taxes they would have been entitled to be subrogated to the position of the municipalities. When appellee reimbursed the purchasers, it in turn would have been entitled to be subrogated to the rights of the purchasers, one of which rights would have entitled purchasers to maintain an action against the appellants for the breach of their general warranty. Surely equity could and should take jurisdiction to prevent this multiplicity of suits and enable appellee to go directly against appellants.

Appellants argue that the lower court erred when it excluded from evidence a release given by purchaser to appellants. The release identified by the purchaser was dated December 26, 1951. The appellants testified that this release concerned certain defects in the heating system. The purchaser also testified that he first discovered the taxes were delinquent in May 1952. The release in question was not printed in the record but we have examined a copy of it furnished by counsel for appellants and we are convinced that it concerned the gas-fired Perkoflash boiler and that it was never intended to be a general release. It is also clear that it could not have been the intention of the parties on December 26, 1951 to have this release apply to taxes since the purchasers did not have any knowledge on that date that there were taxes due and owing. A waiver or release is to be construed strictly so as not to bar a claim that had not accrued at the date of the execution of the release. *Henry Shenk Co. v. Erie,* 352 Pa. 481, 43 A. 2d 99; *Crum v. Penna. R.R. Co.,* 226 Pa. 151, 75

A. 183; *Brill's Estate,* 337 Pa. 525, 12 A. 2d 50; and *Cockcroft v. Metro. Life Ins. Co.,* 125 Pa. Superior Ct. 293, 189 A. 687, wherein Judge RHODES, now President Judge of this Court, said at page 299: " 'It is a settled rule of construction that an agreement comprehends only those things in respect to which it appears the contracting parties proposed to contract, and not others they never thought of . . . the release cannot be allowed to embrace anything beyond it': Crum v. Pennsylvania Railroad Co., 226 Pa. 151, at page 156, 75 A. 183, at page 185. A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties when it was given. See 53 Corpus Juris, §85, p. 1268; Miskel v. Lehigh Valley Coal Co., 85 Pa. Superior Ct. 357, 361." It is our opinion that the lower court correctly applied the law in excluding this release.

Judgment affirmed at cost of appellants.