## Simpson Estate

*James A. Strite*, for exceptant.

*J. Glenn Benedict*, contra.

SHUGHART, P. J., April 28, 1965.—Mabel V. Simpson died a resident of Franklin County on December 19, 1963. She left no spouse to survive her but was survived by a daughter, Margaret Simpson Griffith, and two grandchildren, Clara Wilson and Sarah Lee Tipton, both of whom were children of Mrs. Griffith. In her last will and testament dated December 17, 1963, she directed that her funeral expenses be paid and made a number of pecuniary legacies that are not involved in the matter before us.

In the second item in her will she provided as follows:

"It is my will that my daughter, Margaret Simpson Griffith, shall receive nothing of my estate."

Paragraph 3 of her will contained a similar provision respecting her grandaughter Clara Wilson.

In the seventh paragraph of her will she directed that:

"All the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate I give, devise and bequeath to Central Presbyterian Church of Chambersburg to be held, used, and enjoyed by such Church for general church purposes."

Section 7 of the Wills Act of April 24, 1947, P. L. 89, provides, inter alia, that any gift for religious or charitable purposes in a will that is executed within 30 days of the death of testator shall be invalid "unless all who would benefit by its invalidity agree that it shall be valid." Mrs. Simpson died two days after the execution of her will. There was no gift over in the event of a failure of this bequest to the church.

Letters testamentary were issued on the estate of Mrs. Simpson to the Chambersburg Trust Company, the executor named in the will. The executor entered upon its duties and subsequently filed an account and requested that an auditor be appointed to make distribution of the balance in its hands. An auditor was appointed and he has filed his report to which exceptions have been taken. These exceptions are now before the court for disposition.

Testatrix' daughter, Mrs. Griffith, contends that since testatrix died within 30 days of the execution of the will, the gift to the church is invalid; and, as there was no alternative gift over, testatrix died intestate as to the remainder of her estate. Therefore, she, as the daughter and sole heir, takes the remainder under the Intestate Act.

It is well established that the attempted exclusion of Mrs. Griffith from participation in the estate by testatrix will not be effective in the event that she is deemed to have died intestate as to the remainder of her estate.

Our courts have said that one by his will may take his estate out of the intestate statutes by devising it to others than his heirs at law, but if he does not, he cannot repeal or control those statutes. Negative words are not sufficient to exclude an heir or next of kin from receiving property by intestacy but there must be an actual gift to some other person in the will to effect an exclusion: Hitchcock v. Hitchcock, 35 Pa. 393, 399.

In Verner Estate, 358 Pa. 280, 286, the court said: ". . . even though an heir be expressly excluded by a will, he takes, nevertheless, if an intestacy results, since his taking is not by reason of the will but, under the intestacy, by operation of law: . . ." (Citations omitted.) See also Sowers Estate, 383 Pa. 566, 574, note.

Two documents were produced in evidence by counsel for the church, over objection, to support the claim of the church that Mrs. Griffith had released any interest which she had in the estate of Mrs. Simpson long prior to the execution of the will. One of these instruments was a general release dated September 21, 1929, which provided as follows:

"Know all men by these presents, That I, Margaret Simpson Griffith, . . . hereby acknowledge the receipt of the sum of Forty-two Hundred Fifty ($4250.00) Dollars of Mabel V. Simpson . . . and in consideration of the payment of said sum to me, do hereby remise, release, and *forever* discharge Mabel V. Simpson, . . . her heirs, executors, administrators or assigns, of and from all manner of actions, and causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims, and demands whatsoever in law or equity which against the said Mabel V. Simpson I ever had, now have, or which my heirs, executors, administrators, or assigns, or any of them, hereafter can, shall, or may have, for or by reason of any cause, matter or thing whatsoever, from the

beginning of the world to the date of these presents." The second exhibit offered in evidence by the church was a certified check dated September 17, 1929, in the amount of $4,250, drawn to the order of Margaret Simpson Griffith, which contained on the face thereof the following words in addition to the usual provisions found on a check: "in full settlement of any past and future claims against my estate."

It is the contention of the church that the release and/or the notation on the check which was endorsed and cashed by Mrs. Griffith constituted a release by Mrs. Griffith of any claim in the estate of testatrix. The church offered no evidence whatsoever as to the occasion for the payment by testatrix to Mrs. Griffith or the basis for the execution of the release. They also strenuously objected to evidence that Mrs. Griffith attempted to introduce which would have shed light on this matter, principally on the basis that the evidence was barred by the "Dead Man's" rule.

A release must always be construed so as to carry out the intention of the parties. Ordinarily a release must be construed to cover only such matters as may fairly be said to have been within the contemplation of the parties when it was given: Bell Telephone Company of Pennsylvania v. Baltimore & Ohio Railroad Company, 155 Pa. Superior Ct. 286, 290.

". . . general words of a release will not usually be construed to bar a claim which had not accrued at the date of the execution of the release (Rapp v. Rapp, 6 Pa. 45), nor a claim, the existence of which was not known to the party giving the release. (Crockroft v. Metropolitan Life Insurance Co., 125 Pa. Superior Ct. 293) :" Brill's Estate, 337 Pa. 525, 527.

In the instant case the release was executed and the check endorsed in September of 1929. While the record does not indicate the age of the parties at that time, there is no evidence that testatrix had drawn a will at

that time, in fact, the evidence indicates that she executed wills only within a few years prior to her death. While there is no testimony admitted into evidence that would indicate to us the purpose for the release or the payment of $4,250 by Mrs. Simpson to her daughter, Mrs. Griffith, we are unable to infer that the release was given as a bar to a claim which would not arise for some 30-odd years simply from the fact that it was executed.

Counsel for the church earnestly contends that while the general release may not be sufficient to bar Mrs. Griffith's claim against her mother's estate, the additional words on the face of the check which was endorsed by Mrs. Griffith are sufficient. What has been stated above concerning the construction to be given to the release is equally applicable to the construction to be placed upon the words on the check. Additional matters, however, must be noted.

First, while there was testimony that the notation on the front of the check was made by Mrs. Simpson, there is no competent evidence that the notation was made prior to the endorsement of the check by Mrs. Griffith. Counsel for Mrs. Griffith attempted to enter into evidence a letter which was sent to Mrs. Griffith by counsel who represented her in litigation between herself and Mrs. Simpson in 1929 which would have conveyed this information; however, this letter was objected to by counsel for the church and was excluded from evidence. It would appear clear, therefore, that counsel cannot take advantage of this evidence, which was excluded at his instance, to support the allegation that the notation was placed on the check before the same was endorsed by Mrs. Griffith. Certainly if the notation was made on the face of the check by Mrs. Simpson after it was given to her by the bank, it would not bar a claim by Mrs. Griffith.

Aside from this matter, one further matter presents

considerable difficulty. There is no doubt that an heir may execute a release and thereby relinquish his rights to share in the decedent's property. Such a release, however, to be enforceable, must be executed for a valuable consideration. Here both the release and check are in consideration of the payment of $4,250. If the words on the check include matters not released in the general document, they were given without consideration and Mrs. Griffith cannot be bound thereby: Rice v. Braden, 243 Pa. 141.

As stated above, the church offered no evidence respecting the basis for the payment of $4,250 by executrix to her daughter, Mrs. Griffith, which is referred to in the exhibits offered and received in evidence. Mrs. Griffith did offer such evidence but it was excluded by the auditor on objection by counsel for the church.

In addition to her own oral testimony and the letter referred to previously, she offered an authenticated copy of a complaint in a suit by her against Mrs. Simpson. This document indicated that suit had been brought by Mrs. Griffith against Mrs. Simpson in assumpsit on July 19, 1929, in the Circuit Court for Frederick County, Maryland. In the complaint Mrs. Griffith averred that Mrs. Simpson wrongfully withheld the sum of $5,000 from Mrs. Griffith, which funds were bequeathed to Mrs. Griffith under the will of her father, Robert L. Simpson. The complaint also alleged that Mrs. Simpson owed other funds to Mrs. Griffith, which the former had withdrawn from bank and applied to her own use.

It is conceded that the statement of claim was properly authenticated under the Act of Congress set forth in 28 U. S. C. A. §1738. Counsel contends, inter alia, that it is inadmissible, because neither the release nor the check referred to a suit, the statement is only a part of the record, and the disposition of the case is not

given. Counsel for the church offered no testimony to explain the basis for any payment by Mrs. Simpson to Mrs. Griffith in 1929. The authenticated copy of the complaint gives clear proof that there was a suit between the parties and the basis therefor. This complaint was admissible to show the issues that existed between the parties at that time: Owens v. Dawson, 1 Watts 149, 150. The complaint was, therefore, relevant to any interpretation to be placed upon the release or the check notation, because it constituted some evidence of the basis for the payment by testatrix to her daughter. The mere fact that the release was offered made this evidence relevant and competent. The fact that oral testimony connecting the suit to the release was excluded does not disqualify the document. The mere fact that the release did not refer to the complaint does not exclude it from the consideration of the court in attempting to construe the effect of the release. In Zurich General Accident and Liability Insurance Company, Ltd. v. Klein, 181 Pa. Superior Ct. 48, the court said at page 56:

" 'It is a settled rule of construction that an agreement comprehends only those things in respect to which it appears the contracting parties proposed to contract, and not others they never thought of . . . the release cannot be allowed to embrace anything beyond it': Crum v. Pennsylvania Railroad Co., 226 Pa. 151, at page 156, 75 A. 183, at page 185. A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties when it was given. See 53 Corpus Juris, §85, p. 1268; Miskel v. Lehigh Valley Coal Co., 85 Pa. Superior Ct. 357, 361." In the above case the court refused to admit a *release* because it was executed prior to the time the releasor discovered the existence of the subsequent claim. Although there was no objection to the introduction of the release in this case, in the absence of any testimony

as to the basis for its execution there exists doubt that it should have been admitted into evidence. Since it was admitted without objection, it is not improper to receive evidence to enable the court to ascertain the basis for its execution.

We do not know whether the complaint constitutes the whole record of the case or not (N. T. 23). The record shows that the copy of complaint in the lawsuit (Exhibit 5) was offered into evidence at the hearing before the auditor on October 22, 1964 (N. T. 22), at the close of which the hearing was adjourned to November 19, 1964, at which time a properly authenticated copy was offered and a ruling was reserved. Counsel for the church had almost 30 days to ascertain if there was anything in the record that was favorable to his position, and if there had been we are certain it would have been offered. For this added reason, we feel it is not error to admit the complaint, even though it may not constitute the full record.

We conclude that the exclusion of the statement of claim constituted error. Upon consideration of the statement, it is obvious that the parties intended the payment of money by the check and the release to be in settlement of the litigation pending between them at that time. Papers executed in regard to the controversy in 1929 cannot be employed to bar a claim that did not arise until 34 years later.

Since we have reached the conclusion that there has been no release by Mrs. Griffith of her intestate share of her mother's estate, there is no need to consider the contention of the church that the purposes of the statutory provision regarding the charitable bequests permit the church to receive the remainder of the estate in this situation.

In reaching our conclusion we have not relied on any of the testimony of Mrs. Griffith which was excluded by the auditor. Therefore, we find no need to determine

now whether such testimony was properly excluded under the "Dead Man's" rule. Since the bequest in favor of the church is invalid because it was included in a will executed less than 30 days before the death of the testatrix and since the testatrix made no gift over of the remainder, she is deemed to have died intestate as to the remainder of her estate. As indicated above, we find that her daughter, Mrs. Griffith, did not release her intestate share in the testatrix' estate; and, therefore, she is entitled to the balance for distribution.

In light of the disposition we have made of the above matters, we deem it unnecessary to pass on any of the other matters which were excepted to in the auditor's report. The matter respecting the attorney's fee was covered by a stipulation which will be operative in light of the disposition made here.

### ORDER

And now, April 28, 1965, the exception to the auditor's report excluding exhibit 5 from evidence is sustained. All other exceptions are overruled and the accountant is ordered and directed to file a schedule of distribution in conformity to the above opinion within 10 days of this date.